

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW TAYLOR MORRIS,<br><br>Defendant. | Case No. 2:24-cr-97 |

## STATEMENT OF FACTS

The United States and the defendant, MATTHEW TAYLOR MORRIS (MORRIS or the defendant), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. Beginning in or about March 2021, and continuing thereafter until in or about May 2022, within the Eastern District of Virginia and elsewhere, the defendant, MATTHEW TAYLOR MORRIS, and his co-conspirators, Donald Rogers, Nicholas Capehart, and Jeffrey Sines, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other, and with other persons both known and unknown, to knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved 50 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

2. The defendant received from the Virginia State Bar a license to practice law in or about October 2012. During all times relevant to the Criminal Information, the defendant was the sole proprietor of Top Tier Law Group, PLLC. During times relevant to the Criminal Information, the defendant maintained a physical office for his law firm at 510 South

1

Independence Boulevard, Suite 200, in the City of Virginia Beach, which is within the Eastern District of Virginia.

3. During all times relevant to the Criminal Information, co-conspirator Donald Rogers was the owner of VA Premier Pawn, which was a Federal Firearm Licensee (FFL) that was authorized to sell firearms. Rogers purchased wholesale quantities of THC (Tetrahydrocannabinol) products, including marijuana, THC vape pens, THC wax, and THC edible products, from sources outside the Commonwealth of Virginia. Rogers personally made payments for these shipments, met the shipments, stored the products in the Eastern District of Virginia, and transferred them in smaller quantities to co-conspirators, including Capehart, Sines, and the defendant, for retail sale in the Eastern District of Virginia and elsewhere.

4. In or about 2021, Capehart sold quantities of THC products to retail customers. The defendant, who had known Capehart for years, introduced Capehart to Rogers, initially believing that Capehart could supply Rogers with THC products. As all involved would learn, however, Rogers bought and sold marijuana products in larger quantities than did Capehart, so Rogers began to supply Capehart, as well as others, including the defendant, with THC products.

5. The defendant and Rogers have known one another since approximately 2018. In 2021, after the defendant introduced Rogers to Capehart so that they could work together to distribute marijuana, the defendant referred customers, including his legal clients, to Rogers for the illegal purchase of THC products. Eventually, the defendant offered to Rogers the use of a room in his law office on South Independence Boulevard for the storage of Rogers's THC products. The defendant knew that Rogers was storing marijuana and related products at the law office, among other reasons, because the defendant helped Rogers move shipments of boxes and duffle bags filled with THC products into the law office.

6. In exchange for his use of the law office, Rogers paid a portion of the law office's monthly rent for several months beginning in late 2021. The defendant gave Rogers a key to the law office to facilitate Rogers's access to it. Until Rogers began using another facility to store THC products, in or about May 2022, Rogers stored approximately 1,000 pounds of marijuana and marijuana products in the defendant's law office. The street value of the marijuana stored at the defendant's law office ranged in value between $800,000 and $1.6 million.

7. Rogers also stored at the defendant's law office, with the defendant's full knowledge and consent, cash proceeds from the illegal sale of THC products. In one photograph taken in the defendant's law office, co-conspirator Nicholas Capehart posed with drug proceeds in excess of one hundred thousand dollars cash, which was being counted to prepare for Rogers's purchase of a new wholesale shipment of THC products from an out-of-state supplier. The defendant's diplomas and legal credentials appear on the wall behind Capehart.

8. In addition to storing THC products that Rogers purchased wholesale, the defendant received from Rogers smaller quantities of THC products, approximately 15 pounds per month, that the defendant himself sold to retail customers. In all, Rogers sold the defendant approximately 70 pounds of THC products.

9. The defendant received at least one firearm from Rogers, to include a Sig Sauer P229 Legion 9mm pistol.

10. When the defendant possessed a firearm, he knew that he was an unlawful user of controlled substances, namely, Adderall (amphetamine salts), cocaine, opiates, and THC. The defendant habitually kept at least one firearm in his law office while he allowed Rogers to store THC products there.

11. On or about April 20, 2021, Capehart, who was vacationing in Las Vegas, Nevada, sought advice from the defendant on sending marijuana products back to the Hampton Roads region of the Eastern District of Virginia. Although the defendant did not represent Capehart in any civil or criminal case, Capehart sought the defendant's advice because Capehart knew that the defendant was an attorney. In text messages, the defendant told Capehart to commingle the marijuana products among "some type of souvenirs and buy some Saran Wrap and wrap whatever you put it in well." The defendant further advised Capehart to address the package not to the defendant, but to the defendant's law firm, to send the package to the defendant's law office, and to "[w]rite legal mail on there somewhere too," reasoning that this would "make it privileged and the cops would have a hell of a time getting a warrant to get around that privilege."

12. Cell phones belonging to Rogers, Capehart, and Sines, lawfully seized pursuant to federal search warrants, contained evidence that the defendant, Rogers, Capehart, Sines, and others unlawfully conspired to knowingly and intentionally distribute and possess with intent to distribute marijuana and marijuana products in the Eastern District of Virginia and elsewhere.

13. The defendant's participation in the events described was undertaken knowingly, intentionally, and unlawfully, and not as a result of an accident, mistake, or other innocent reason.

14. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
John F. Butler
Anthony C. Marek
Assistant United States Attorneys
Graham Stolle
Special Assistant United States Attorney

5

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MATTHEW TAYLOR MORRIS, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
MATTHEW TAYLOR MORRIS

I am MATTHEW TAYLOR MORRIS's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
James O. Broccoletti, Esq.
Attorney for MATTHEW TAYLOR MORRIS